1  BARRY J. PORTMAN
   Federal Public Defender
2  ELIZABETH M. FALK
   Assistant Federal Public Defender
3  19th Floor Federal Building – Box 36106
   450 Golden Gate Avenue
4  San Francisco, CA 94102
   Telephone: (415) 436-7700
5
   Counsel for Defendant CRAYTON
6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,            )   No. CR-07-803 MMC
                                        )
12         Plaintiff,                   )   **OBJECTIONS TO LOSS AMOUNT**
                                        )   **CALCULATIONS AND ADJUSTMENT**
13 vs.                                  )   **OF GUIDELINES UNDER U.S.S.G. §**
                                        )   **2B1.1**
14 LAWRENCE CRAYTON,                    )
                                        )   Date:  July 30, 2008
15         Defendant.                   )   Time:  2:30 p.m.
                                        )   Court: The Honorable Maxine M. Chesney
16 _____ )

17

18                            **INTRODUCTION**

19         Defendant Lawrence Crayton now stands before the Court for sentencing, having been

20 convicted of two counts of Theft Concerning Programs Receiving Federal Funds under 18 U.S.C.

21 § 666(a)(1)(A).

22         Mr. Crayton hereby submits his objections to the loss amount alleged in this matter, listed

23 in the Presentence Report in Paragraphs 9, 10, and 17.  Specifically, the Presentence Report

24 indicates that a loss figure of $239,250.90 should be used for Guideline calculation purposes,

25 resulting in a 12 level increase in the Base Offense level.  *See* U.S.S.G. §2B1.1(b)(1).  The

26

Probation Officer's statement of loss relies entirely on a spreadsheet prepared by the case agent assigned to this matter, as the Probation Officer has not reviewed any of the underlying data supporting the spreadsheet.  As there are numerous problems contained in the spreadsheet relied upon by the Probation Department, Mr. Crayton objects to its use at sentencing and in the Presentence Report on grounds that the spreadsheet is inaccurate and inadequately supported by the underlying data.

While Mr. Crayton is willing to stipulate to a loss amount between $70,000 and $200,000 based on his memory of the conduct at issue, he cannot accept the government's loss theory, which appears to attempt to hold him accountable for stealing the value of each and every service voucher he ever wrote while employed as a Station Agent at Amtrak.  Accordingly, as set forth in detail below, Mr. Crayton objects to any loss calculation above $120,000 and any Guideline adjustment for loss amount greater than 8 levels, pursuant to U.S.S.G. §2B1.1(b)(1).

## OVERVIEW OF GUIDELINE OBJECTIONS TO LOSS AMOUNT

This case involves actions taken by Mr. Crayton while he worked as a Station Agent at the San Francisco station of Amtrak.  In February, 1998, Mr. Crayton was promoted to Station Agent of the San Francisco station.  His job duties as Station Agent included supervising the ticket clerks, conducting ticket sales, auditing other clerks' work products, and producing daily sales reports of ticket purchases at the station.  Along with his other duties, Mr. Crayton and the other sales agents at the station occasionally wrote out service credits, or "service vouchers" for passengers that experienced a disruption in service, such as lost baggage and/or late trains. Although Amtrak's policy on the service vouchers indicated that the value of the vouchers should not exceed $50.00, Mr. Crayton was trained by his supervisor Jeff Snowden that this Guideline did not apply; the most important thing was to retain repeat customers.  As such, Mr. Crayton and other agents working at Amtrak frequently issued service vouchers to disrupted passengers in large (hundred dollar increment) amounts.  These service vouchers are the subject

1  of the instant litigation.

2  Mr. Crayton has now pled guilty, and fully accepts responsibility for the theft he
3  undertook at Amtrak between 1999 and 2004. Specifically, at the same time Mr. Crayton issued
4  legitimate vouchers to legitimate passengers, he was also issuing and cashing fraudulent
5  vouchers for himself. The way Amtrak's daily service reports balanced allowed Mr. Crayton to
6  write out a fraudulent voucher and then pretend to "accept" that voucher for payment on a ticket.
7  By registering the false voucher on the daily service report, Mr. Crayton freed cash in the amount
8  of the voucher and was able to withdraw that cash amount from the register. Accordingly, over
9  the years 1999 and 2004, Mr. Crayton issued and accepted for payment both legitimate and non-
10 legitimate vouchers. The heart of the dispute between the parties over the appropriate loss
11 amount in this case is the proportion of legitimate vouchers written out by Mr. Crayton versus the
12 proportion of illegitimate vouchers – and the fact that at the current time, Mr. Crayton has not
13 seen a reliable, valid government analysis that is able to establish the difference between the two.

14 Discovery was initially produced in this matter in January, 2008. At that time, the
15 government's loss amount chart was supported by its assertion that all the ticket numbers listed
16 on the spreadsheet had been determined to be invalid through Amtrak's computer system; that
17 the ticket entries had been hand checked by an agent using Amtrak's computer system, and each
18 entry containing a ticket number had been determined to be a false voucher. Along with the
19 spreadsheet, the government produced a large binder of printouts showing that each ticket
20 number listed on the spreadsheet had been hand-checked by the agent through Amtrak's
21 computer system, and that each was determined to be invalid. Undersigned defense counsel
22 spent a large amount of time reviewing the agent's work on the cross-checking and had
23 determined, prior to sentencing, that the analysis contained a large number of errors; in many
24 cases, the ticket number the agent "checked" in the computer system did not match the number
25 written on the voucher. Prior to July 21, 2008, defense counsel had been prepared to move

26

*Crayton*, CR 07-0803 MMC
OBJECTIONS TO SENTENCING GUIDELINE
CALCULATION (U.S.S.G. § 2B1.1)            3

1  forward on a series of objections based upon the inaccurate cross checking.

2  During the afternoon of July 21, 2008, undersigned defense counsel received a different
3  binder from the government, as well as a letter attached hereto as Exhibit D. In that letter, the
4  government explains that the methodology relied upon by the case agent to determine the validity
5  of the ticket numbers written on the vouchers was not accurate; the fact that a ticket number was
6  determined to be invalid as of August, 2006 does not necessarily mean that the ticket number was
7  invalid at the time the voucher was cashed. *See* Exhibit D, attached hereto. In the letter, the
8  government assured undersigned defense counsel that there were other ways that the case agent
9  could determine the validity of the ticket numbers, and hoped to deliver a "new" analysis by
10 Wednesday. Said analysis has yet to arrive, and undersigned defense counsel can no longer wait
11 to file her objections to the loss chart the government apparently still intends to rely upon on July
12 30, 2008.

13 Mr. Crayton hereby objects under FRCP 32 to the Court's use of any "new" analysis
14 provided by the government at this late date. According to what Mr. Crayton now understands,
15 the assumptions that underlaid the government's loss chart attached at Exhibit A are faulty, and
16 they are unable at the current time to address which ticket numbers listed on service vouchers on
17 the chart were fabricated. At this point, Mr. Crayton certainly cannot remember either. Given
18 the problems that currently exist with the government's loss chart, as well as the fact that
19 sentencing is a mere six days away, Mr. Crayton asks the Court to accept his stipulated loss
20 amount of between $70,000 and $120,000 since the government cannot, at the current time,
21 prove any higher amount by a preponderance of the evidence.

22 **I.    FIRST SET OF OBJECTIONS**

23 Mr. Crayton's first set of objections is a general objection that the Court should not utilize
24 at sentencing the government's loss calculation of $239,250.90, as memorialized in its loss chart
25 (hereinafter "government loss chart"), attached hereto as Exhibit A. The main problem that
26

1  currently exists with the government's chart is that none of the ticket numbers listed on the chart
2  have been verified as illegitimate tickets, thereby supporting the conclusion that the service
3  vouchers with those ticket numbers listed on them are illegitimate.  As previously stated, the
4  government bears the burden of proof on loss amount by a preponderance of the evidence – and
5  the government itself has admitted that the chart was created while utilizing a flawed
6  methodology.  There is thus a high likelihood that the government's original loss amount chart
7  includes vouchers that were legitimately issued by Mr. Crayton and accepted for payment.  Given
8  the fact that the government has acknowledged that its original chart and the data contained
9  therein is based upon a flawed methodology, it would be unfair for the Court to rely upon said
10 chart at sentencing.  Mr. Crayton thus requests that the chart be struck in its entirety.

## II.    SECOND SET OF OBJECTIONS

Outside of the ticket number validity issue, the government's loss amount chart attached hereto at Exhibit A contains a number of errors, as well as entries that were made without sufficient proof or back-up data to tie Mr. Crayton to the entry at issue.  As these objections stand regardless of whether or not the Court opts to use the government's loss chart in some capacity at sentencing, Mr. Crayton has set forth his specific objections to the government's loss chart in Exhibit B, attached hereto.  These objections are made for a variety of reasons, including the fact that several of the government's entries on the loss chart utterly lack any sort of supporting voucher documentation.  In the most egregious cases, there is no documentation at all supporting the entries in any of the discovery produced to defense counsel.  In at least four cases, the vouchers included in the chart are not even signed by Mr. Crayton, but instead by a different service agent.  Moreover, some of the ticket numbers listed on the vouchers are illegible or missing.

To ensure that the Court is absolutely clear about Mr. Crayton's specific objections, Mr. Crayton herein submits a chart in Exhibit B that lists each of his objections to the government's

loss chart by line number, exhibit number, BATES number, name on the voucher (if applicable) and explains the objection.  This Objections chart attached as Exhibit B corresponds to the green highlighted entries in the government's loss chart of $239,250.90, ( attached in highlighted form as Exhibit A.)  In addition, Mr. Crayton herein provides all the discovery received by the defense from the government in support of its loss calculation at Exhibit C.  Exhibit C is the backup data for Exhibit A; it contains all the service vouchers and daily sales reports the government claims that its loss amount chart relies on.  Exhibit C is tabbed for the Court's convenience to mark each objection by line number - the line numbers listed on Mr. Crayton's objections chart at Exhibit B correspond to the location in the discovery tabbed by line number in Exhibit C, which in turn correspond to the highlighted entries (listed in chronological order by line number) attached on Exhibit A.  In providing the Court with all the aforementioned highlighted, tabbed and charted documentation, Mr. Crayton endeavors to be perfectly clear with the Court about the nature of his objections and the reasons for them.

The total amount of objections Mr. Crayton has to specific entries on the government's loss amount chart (outside of the issue that the government cannot prove that any of the ticket numbers listed on the vouchers are invalid) is **$45,419.30.**  This number affects the Guideline calculation in this case, as Mr. Crayton's Offense Level will drop if the government cannot prove a loss amount over $200,000.  As such, outside of the ticket number validity issue outlined above, Mr. Crayton's specific objections to errors in the government's loss chart, as set forth in Exhibits A, B, and C attached, potentially influence this Court's calculation of the Guidelines in this matter.

### III.    THIRD SET OF OBJECTIONS

The third set of Mr. Crayton's objections to the loss amount calculations focuses specifically on the year 2004, Bates nos. CRA2020-2176.  For this year, the government has only produced copies of vouchers written by Mr. Crayton, without correlating daily service reports

indicating that these vouchers were ever turned into Amtrak for payment. See CRA2020-2176, attached hereto at Exhibit C. In sum, the government has provided no proof that these vouchers ever affected Amtrak's bottom line or were intended to affect Amtrak's bottom line, as there is no evidence that they were ever turned into Amtrak. The 2004 vouchers provided by the government and listed in Exhibit A total **$61,992.00**, and is a separate set of objections than the objections already set forth.

### IV. REQUEST FOR EVIDENTIARY HEARING IF THE COURT INTENDS TO ACCEPT THE GOVERNMENT'S LOSS AMOUNT SPREADSHEET

Should the Court be inclined to accept the government's loss calculation spreadsheet at sentencing despite the problems with the analysis outlined above, Mr. Crayton respectfully requests an evidentiary hearing to address the issues raised by this Memorandum. Moreover, to the extent the government attempts to deliver a "new" analysis in defense of its spreadsheet prior to the sentencing date of July 30, 2008, Mr. Crayton herein lodges his objection under Federal Rule of Criminal Procedure 32 in advance, as counsel will not possibly have time to digest and dissect this "new" analysis in the manner in which justice and fairness require.

### CONCLUSION

For the aforementioned reasons, Mr. Crayton hereby objects to the government's loss calculation in this matter, and requests the Court to disregard the analysis and unreliable and inaccurate, based upon the grounds listed above. He instead requests the Court to accept his stipulation that the loss amount in this matter is more fairly calculated at between $70,000 and

\\
\\
\\
\\
\\

*Crayton*, CR 07-0803 MMC
OBJECTIONS TO SENTENCING GUIDELINE
CALCULATION (U.S.S.G. § 2B1.1)            7

1 | $120,000, resulting in an 8 level bump to the Base Offense Level under U.S.S.G. §2B1.1(b)(1).

2 | Dated: July 24, 2008

                                           Respectfully submitted,

                                           BARRY J. PORTMAN
                                           Federal Public Defender

                                                      /S/

                                           ELIZABETH M. FALK
                                           Assistant Federal Public Defender