JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

CHRISTINA HUA (CABN 185358)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7534
    Facsimile: (415) 436-7234
    E-mail: tina.hua@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07-0803-MMC |
| Plaintiff, | |
| v. | GOVERNMENT'S OPPOSITION TO DEFENDANT'S SENTENCING MEMORANDUM |
| LAWRENCE E. CRAYTON III, | |
| Defendant. | |

    The United States opposes defendant LAWRENCE E. CRAYTON III's request for a non-custodial sentence. From 1999 to 2004, CRAYTON embezzled over $235,152.90 from Amtrak. He was able to perpetuate the fraud because he was the sole Station Agent in the San Francisco station. As the Station Agent, he modified the daily sales reports to indicate that the subordinate station clerks had accepted service vouchers, which he fraudulently prepared to offset the embezzled amounts.

    CRAYTON disputes the loss amount and requests a non-custodial sentence based in combination on his service in Vietnam, his age, his post-offense employment record, his family responsibilities, his post-traumatic stress disorder and depression, and his remorse for his

GOVERNMENT'S OPPOSITION TO DEFENDANT'S SENTENCING MEMORANDUM
CR 07-0803-MMC                                    1

actions. Def. Sent. Mem. at 18, 23. Even in combination, these factors do not warrant a departure from the Guidelines range, let alone a non-custodial sentence. The Court should factor in defendant's characteristics, including his family and community responsibilities, and his service in Vietnam, to impose a sentence at the low end of the Guidelines. Guidelines sentences reduce unwarranted sentencing disparity and the Congressional and Sentencing Commission policies reflected in the Guidelines are sound. See Rita v. United States, 127 S.Ct. at 2464-65 (. . . "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."). Therefore, the government respectfully requests that the Court impose a low end Guideline sentence of 24 months in prison.

### I.  PROBATION CORRECTLY CALCULATED THE GUIDELINE RANGE TO BE 24-30 MONTHS IN PRISON.

As set forth recently in United States v. Zavala and Carty, 520 F.3d 984, 991 (9th Cir. 2008), the Court should first determine the correct applicable guideline range, which is 24 to 30 months in the instant case. Not only should this range be "the starting point and the initial benchmark", but they "are to be kept in mind throughout the process." Id. Therefore, when fashioning CRAYTON's sentence, the government requests that the Court begin its analysis with a sentencing range of 24 to 30 months in prison, and use that benchmark when determining whether any factors warrant any decrease in the sentence.

#### A.  THE PROPER LOSS CALCULATION IN THIS CASE IS $235,152.90.

Probation's calculation that the guideline range of 24-30 months in prison is correct. Defendant raises three sets of objections to the government's loss spreadsheet. The first set of objections are that none of the ticket numbers have been verified as illegitimate tickets. As discussed further in the Government's Sentencing Memorandum, the other evidence, such as Crayton's confession, the fake vouchers which CRAYTON signed, and the 920 Daily Sales Reports, proves that the government's loss calculation is $235,152.90, irregardless of whether the ticket numbers on the vouchers were illegitimate.

The second set of defense objections are specific objections to certain line items in the government's spreadsheet. Attached as Government's Exhibit A is a response to each of the

GOVERNMENT'S OPPOSITION TO DEFENDANT'S SENTENCING MEMORANDUM
CR 07-0803-MMC                                        2

1  defendant's objections, organized by the alleged problem.  The first category of problems refer
2  to problems with ticket numbers.  The second category on the spreadsheet pertain to items which
3  the government agrees with.  See Govt. Sent. Mem. pp 8-9.  The total which the government
4  now agrees to deduct is $4099.00.[1]  The spreadsheet also contains items which are supported by
5  the sales report and not the service voucher, items where the defendant was missing supporting
6  documents which were later provided by the government, and objections which appear to have
7  been mistakenly included by the defendant.
8        The third set of objections are based on the fact that the 920 sales reports for the 2004
9  vouchers have been destroyed, and therefore, the government cannot show that the vouchers
10 were turned into Amtrak for payment.  The 2004 sales reports were all obtained from the
11 Account Revenue department in Philadelphia.  Service vouchers, along with the daily sales
12 reports and daily receipts, are only turned into Account Revenue by the Station Agents to show
13 that the service vouchers had been redeemed.  The fact that the vouchers were obtained from the
14 Account Revenue department in Philadelphia necessarily indicates that the Station Agent
15 claimed these vouchers were redeemed.  As the only station agent in San Francisco, Lawrence
16 Crayton would have submitted these vouchers to the Account Revenue department to indicate
17 that they had been redeemed.  Therefore, taking into account some of the objections by
18 defendant, the proper loss amount is $235,152.90.
19       Defendant has requested an evidentiary hearing if the Court accepts the Government's
20 Loss Amount Spreadsheet.  Def. Objection to Sentencing Guideline at 7.  An evidentiary hearing
21 should only be held if there is a disputed material fact.  In the instant case, the parties do not

---

[1] In the Government's Sentencing Memorandum, the Government had agreed to subtract $3,789 from the loss amount based on defendant's prior objections submitted to the Government on July 22, 2008. The government now agrees to subtract $4,098 rather than $3,789 from the original loss amount of $239,250.90. In the specific objections filed on July 24, 2008, the defendant requested that additional entries be deducted which the government agrees with (line ## 2, 6, 210, 461). Furthermore, the government realized that the discovery binder did contain the sales reports for entries in line numbers 219 and 433, when the government previously thought there were no supporting documents for those entries. Therefore, the new loss amount is $235,152.90.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S SENTENCING MEMORANDUM
CR 07-0803-MMC                    3

appear to disagree on the facts surrounding the spreadsheet, only the final loss total.  For example, the parties disagree on whether the entries supported by 920 Daily Sales Reports but not vouchers should be included in the loss amount.  However, the parties do agree on the fact that the noted line items are supported by the 920 Daily Sales Reports but not vouchers.  Because there is no disagreement as to the fact of what the particular entry is supported by, the Court can decide which entries should be included in the loss amount without holding an evidentiary hearing.

### B.     PROBATION CORRECTLY APPLIED A TWO-POINT ENHANCEMENT FOR ABUSE OF POSITION OF TRUST.

Probation accurately included two points for Abuse of Position of Trust.  Defendant suggests that CRAYTON's job is like that of a bank teller's who merely handled money, and argues that the enhancement should not apply.  Def. Sent. Mem. at 13-14.  CRAYTON was the supervisor of the ticket clerks, and he had significantly more responsibility and less oversight than the ticket clerks.  He reconciled the receipts of each day, and most importantly, modified the daily sales entries of the ticket clerks.  If a ticket clerk had committed the fraud, that ticket clerk could not have modified the entries of the other ticket clerks to indicate that a service voucher rather than cash had been used.  A responsible station agent should have then noticed the high use of service vouchers handled by a particular ticket clerk, when reconciling the amounts in the daily sales report.  Because of his position, CRAYTON was able to carry on the fraud for the period of 6 years in the amount of $235,152.90.  Therefore, the two point enhancement for Abuse of Position of Trust should be applied.

## II.    CONSIDERATION OF THE 3553(a)  FACTORS DO NOT WARRANT ANY DECREASE TO THE GUIDELINE RANGE OF 24 TO 30 MONTHS IN PRISON.

### A.     THE DEFENDANT'S HISTORY AND CHARACTERISTICS AND THE NATURE AND CIRCUMSTANCES OF THE OFFENSE DO NOT WARRANT A NON-CUSTODY SENTENCE.

The defendant argues that a variety of personal characteristics, including his contributions to his church, his deep remorse, his wife's remission from cancer, his employment with AC Transit, warrant a departure to a non-custodial sentence.  While these factors justify a sentence at the low-end of the sentencing guidelines range, these factors, even in combination,

do not warrant a decrease in the sentence.

        1.    <u>The Court Should Decline to Decrease Crayton's Sentence Based on Depression and Posttraumatic Stress Because There Is No Evidence That Crayton's Mental State Contributed to the Commission of the Offense.</u>

The Court should not decrease the sentence based on CRAYTON's mental status, whether alone or in combination with other factors. There is no evidence that CRAYTON's post-traumatic stress or depression "significantly impaired his ability to "(A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." <u>See</u> U.S.S.G. §5K2.13. Although <u>Booker</u> does afford the Court discretion to consider all factors, even those that were discouraged or prohibited under the Guidelines, the post-<u>Booker</u> world does not suggest that the pre-<u>Booker</u> system of departures should be ignored. In <u>United States v. Mohamed</u>, 459 F.3d 979 (9th Cir. 2006), the Ninth Circuit found that post-<u>Booker</u>, Courts should treat the scheme of upward and downward departures "as essentially replaced by the requirement that judges impose a "reasonable" sentence. <u>Id.</u> at 986. However, the Court made clear that lower courts can consider the pre-<u>Booker</u> system of departures:

> We do not mean to suggest, however, that the pre-<u>Booker</u> system of departures should be ignored. That system reflected the Sentencing Commission's judgment about what types of considerations should or should not take a case out of the "heartland of typical cases" such that an extra-guidelines sentence would be justified. If a district court's reasons for exercising its post-<u>Booker</u> discretion coincide with the factors allowed or encouraged under the pre-<u>Booker</u> system of departures, such overlap may suggest that the sentencing decision was reasonable.

<u>Id.</u> at 987 [citations omitted]. Therefore, the Court can consider whether the defendant's mental condition impaired his ability to understand right from wrong or control his criminal behavior in deciding what sentence to impose. Because there is no evidence that the defendant's depression or post-traumatic stress did either, the Court should use its discretion to depart based on mental factors.

In <u>United States v. Menyweather</u>, 447 F.3d 625, 628 (9th Cir. 2006), the case cited by defendant, the Ninth Circuit upheld a departure for a defendant based on the fact that the defendant had no criminal history, suffered from posttraumatic stress, and was her minor daughter's only available caretaker. In <u>Menyweather</u>, the Court departed downward based in

GOVERNMENT'S OPPOSITION TO DEFENDANT'S SENTENCING MEMORANDUM
CR 07-0803-MMC                5

part on the fact that she suffered posttraumatic stress from abandonment by her parents as a child, and the violent murder of her fiancé when she was 5 months pregnant with their child, the bloody aftermath of which she witnessed. The significant difference, however, is that the Menyweather defendant presented evidence from a forensic psychologist that the offense "was part of a "manic denial of psychic trauma accompanied by compulsive coping behaviors." 447 F.3d at 628. In upholding the district court's decision to depart based on the post-traumatic stress, the Ninth Circuit explained:

> The district court had the opportunity to evaluate Dr. Counter's credibility under cross-examination, and we cannot say that the court clearly erred by finding her credible and by accepting her opinion that Defendant's chronic symptoms of post-traumatic stress were linked to her inability to make reasoned decisions and to her compulsive acquisition behavior.

Id. at 632. In contrast, there is no evidence that any of CRAYTON's criminal conduct was attributed to his depression or post-traumatic stress. In fact, CRAYTON did not begin treatment for his post-traumatic stress until 2005, well after the crime had been discovered and had stopped.

Note that although the Menyweather district court conducted the initial sentencing hearing before Booker was decided, the Ninth Circuit expressed its belief that the district court would have imposed the same sentence post-Booker. Id. at 627. The Court states:

> Moreover, even if the district court strayed from the departure authority available under the Guidelines, any error was harmless in view of the sentencing factors listed in 18 U.S.C. § 3553(a) (which the district court can now consider after Booker) and in view of our belief that the court would impose the same sentence again, having steadfastly maintained its position in the face of two opportunities to revise its sentence.

Id. at 627-28. Therefore, given that the instant case can be distinguished from Menyweather in that CRAYTON's post traumatic stress and depression did not contribute to the offense, the Court should use its discretion not to decrease the sentence based on CRAYTON's mental state.

    2.    <u>Defendant's Family Circumstances Do Not Warrant a Departure Since No One is Necessarily Dependant on CRAYTON's.</u>

Defendant requests a non-custodial sentence, in part, because he is the sole provider of his family of five, which includes his wife Linda Crayton, his adult step grandchildren, and a two-year old step great-grandson. While it is commendable that Defendant chooses to support

his family members, the Defendant's choice to do so should not warrant a decrease in sentence under the 3553(a) factors. Each of the family members appears to be able to either financially take care of themselves, or have someone else take care of them. In the instant case, Linda Crayton appears to generate some income by taking care of neighborhood children, although she chooses to take care of one child free of charge. There is no evidence that CRAYTON's adult step-grandchildren, Nkenge Williams, age 24, and Bianca Williams, age 18, need to rely on CRAYTON as their primary source of financial support, particularly given their ability to work and the fact that their mother, Linda Williams, is still alive. Similarly CRAYTON's 2 year old great step-grandson can be looked after by his mother, grandmother, and great grandmother.

     The family may also collect or be eligible to collect other sources of income. Defendant states that Linda Crayton had early retirement in 1984, and was unable to work due to physical ability. Def. Sent Mem. at 5. Defendant also states that Crayton resigned so as not to lose his retirement fund from AMTRAK. Def. Sent. Mem. At 9. It is unclear whether the family receives any monthly assistance from the Amtrak retirement fund, from Linda Crayton's prior employment, from disability payments, or from other forms of government assistance. Note also, that CRAYTON owns other real estate in Louisiana, to the extent that the magistrate judge ordered that CRAYTON make monthly contribution to his legal defense.

     CRAYTON relies on Menywether, 447 F.3d 625, and United States v. Whitehead, __ F.3d __, 2008 WL 2718867 (9th Cir. July 14, 2008) to support his argument that he should receive a non-custodial sentence based in part on his family responsibilities. Def. Sent. Mem. at 17. However, both of those cases involved care of minor aged children who depended on the parent facing a jail sentence. In Menyweather, the defendant's daughter was 11 years old at the time of the first sentencing hearing, and defendant was the sole parent and primary source of financial support. 447 F.3d at 628. The daughter's father had been violently murdered, which contributed to the post traumatic stress. Id. Other family members lived in an area which would be unsafe to raise the child. Id. at 633. Similarly in Whitehead, the Court found that the defendant's daughter was 8 years old and depended on him. 2008 WL 2718867 at 1. Therefore, CRAYTON's family circumstances can be easily distinguishable from cases he cites, since

GOVERNMENT'S OPPOSITION TO DEFENDANT'S SENTENCING MEMORANDUM
CR 07-0803-MMC                    7

CRAYTON is not the only person able to provide for family, and his family does not involve young children who cannot be raised by someone else..

### 3. The Nature of the Offense and Personal Characteristics of the Defendant Do Not Warrant a Non-custodial Sentence.

Even in these more-compelling cases cited by the defendant, the courts do not appear to be widely embracing large departures to non-custodial sentences.  Although the Menyweather court found that the family circumstances and post traumatic stress warranted a significant sentence reduction, the Court imposed a sentence which included 40 days of jail on consecutive weekends and 3,000 hours of community service.  In Whitehead, where the Court departed to a lenient sentence of probation, community service, and restitution, the dissent characterized the affirmation of the non-custodial sentence as "not an exercise of discretion so much as an abdication of responsibility."  2008 WL 2718867 at 2.  Even the Whitehead majority opinion initially observed, "Even if we are certain that we would have imposed a different sentence had we worn the district judge's robe, we can't reverse on that basis."  Id. at 1, citing Gall v. United States, – U.S. –, –, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007).   Especially given that the Crayton's family and mental characteristics are less compelling than the Whitehead or Menyweather defendants, CRAYTON should not be entitled to any decrease from his sentencing range based in any part on his personal characteristics.

**B.    CONSIDERATION OF ALL THE 3553(A) FACTORS, INCLUDING NEED FOR SENTENCE IMPOSED AND THE TYPES OF SENTENCES AVAILABLE, JUSTIFY A SENTENCE OF 24 MONTHS.**

As discussed above, the Guidelines calculations call for a sentence of 24 to 30 months in prison. The defendant embezzled a large amount of money over a long period of time.  To sentence him to a non-custodial sentence because of his favorable personal characteristics does not take into account the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.  Similarly, a non-custodial sentence does not afford adequate deterrence, as the Court would giving the green light to commit crimes as long as the defendant had other redeeming qualities, such as providing for his family.  Guidelines sentences reduce unwarranted sentencing disparity and because the

1  Congressional and Sentencing Commission policies reflected in the Guidelines are sound. See
2  Rita v. United States, 127 S.Ct. at 2464-65 (. . . "it is fair to assume that the Guidelines, insofar
3  as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s
4  objectives."). If the Court does find that a sentence within the guideline range is reasonable, the
5  fact that both the sentencing court and the Commission agree on the sentence "significantly
6  increases the likelihood that the sentence is a reasonable one," Id. at 2463, because "when the
7  judge's discretionary decision accords with the Commission's view of the appropriate
8  application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable,"
9  Id. at 2465. Therefore, the government requests that after considering all the factors, the Court
10 sentence CRAYTON to a low end Guidelines sentence of 24 months in prison.

11 DATED: July 25, 2008                                     Respectfully submitted,

12                                                          JOSEPH P. RUSSONIELLO
                                                            United States Attorney
13

14                                                                 /s/
15                                                          CHRISTINA HUA
                                                            Assistant United States Attorney

GOVERNMENT'S OPPOSITION TO DEFENDANT'S SENTENCING MEMORANDUM
CR 07-0803-MMC                                  9